```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA,
                                                Criminal Action
             Plaintiff,                         No. : 21-599

        vs.                                     Washington, DC
                                                May 5, 2023
   DONNIE DUANE WREN - 1,
   THOMAS HARLAN SMITH - 2,
                                                9:31 a.m.
             Defendants.
   _____/


                        TRANSCRIPT OF JURY TRIAL
                 BEFORE THE HONORABLE REGGIE WALTON
                    UNITED STATES DISTRICT JUDGE


   APPEARANCES:

   For the Plaintiff:        TIGHE ROBERTSON BEACH
                             USAO
                             601 D Street NW
                             Washington, DC 20001

                             VICTORIA ANNE SHEETS
                             USAO
                             601 D Street NW
                             Washington, DC 20001

                             MELANIE ALSWORTH
                             DOJ-CRM
                             145 N Street NE, East Wing, Ste 2e300
                             Washington, DC 20530

                             MICHAEL ROMANO
                             US DEPARTMENT OF JUSTICE
                             1331 F Street NW
                             Washington, DC 20004


                   APPEARANCES CONTINUED ON NEXT PAGE
```

```
 1                         APPEARANCES

 2   For Defendant Wren:    GEORGE PALLAS
                            GEORGE T. PALLAS, PA
 3                          2420 Coral Way
                            Miami, FL 33145
 4

 5                          DYLAN GEORGE BARKET
                            BARKET LAWYERS
 6                          66 W. Flagler Street, 7th Floor
                            Miami, FL 33130
 7
     For Defendant Smith:   GREGORY PARK
 8                          FEDERAL PUBLIC DEFENDER
                            Northern District of Mississippi
 9                          1200 Jefferson Avenue, Ste 100
                            Oxford, MS 38655
10

11                          MICHAEL SCOTT DAVIS
                            FEDERAL PUBLIC DEFENDER
12                          Northern District of Mississippi
                            1200 Jefferson Avenue, Ste 100
13                          Oxford, MS 38655

14   Court Reporter:        SHERRY LINDSAY
                            Official Court Reporter
15                          U.S. District & Bankruptcy Courts
                            333 Constitution Avenue, NW
16                          Room 6710
                            Washington, DC 20001
17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2             THE COURTROOM DEPUTY:  Your Honor, this is criminal
 3   matter 21-599, United States of America versus Donnie Duane
 4   Wren as defendant 1 and Thomas Harlan Smith as defendant 2.
 5             May I have counsel approach the lectern and state
 6   your appearance for the record, beginning with the government.
 7             MR. BEACH:  Good morning, Your Honor.  Tighe Beach
 8   along with Melanie Alsworth, Victoria Sheets and Elizabeth
 9   Hayman for the United States.
10             MR. BARKET:  Good afternoon, Judge.  Dillon Barket on
11   behalf of Mr. Wren who is present in the courtroom.
12             THE COURT:  Good afternoon.
13             MR. PARK:  Greg Park on behalf of Thomas Smith who is
14   present, along with cocounsel.  Good afternoon.
15             THE COURT:  Good afternoon.
16             The jury did send a note saying they had reached a
17   verdict.
18             (The jury is seated.)
19             THE COURTROOM DEPUTY:  Everyone is present, Your
20   Honor.
21             THE COURT:  You may be seated.  Ladies and gentlemen,
22   we did receive a note indicating that you had reached your
23   verdict; is that correct?
24             A JUROR:  Yes.
25             THE COURT:  Would the foreperson please indicate who
```

```
 1    the foreperson is?
 2              Very well.  The courtroom deputy clerk will be taking
 3    your verdict.
 4              THE COURTROOM DEPUTY:  Will the defendant rise?
 5              Will the foreperson rise?
 6              As to Donnie Duane Wren for Count 2, how does the
 7    jury find, not guilty or guilty?
 8              A JUROR:  Guilty.
 9              THE COURTROOM DEPUTY:  As to Count 4, how does the
10    jury find, guilty or not guilty?
11              A JUROR:  Guilty.
12              THE COURTROOM DEPUTY:  As to Count 7, how does the
13    jury find, guilty or not guilty?
14              A JUROR:  Guilty.
15              THE COURTROOM DEPUTY:  As to Count 8, how does the
16    jury find, guilty or not guilty?
17              A JUROR:  Not guilty.
18              THE COURTROOM DEPUTY:  As to Count 9, how does the
19    jury find, not guilty or guilty?
20              A JUROR:  Not guilty.
21              THE COURTROOM DEPUTY:  As to Count 13, how does the
22    jury find, not guilty or guilty?
23              A JUROR:  Not guilty.
24              THE COURT:  As to Count 14, how does the jury find,
25    not guilty or guilty?
```

```
 1              A JUROR:  Not guilty.
 2              THE COURT:  Is there a request for a poll?
 3              MR. BARKET:  Yes, Judge.
 4              THE COURT:  Mr. Smith and counsel can be seated.
 5   Mr. Wren should remain standing.
 6              THE COURTROOM DEPUTY:  The jury has just heard the
 7   verdict read.
 8              THE COURT:  You can be seated, miss.
 9              THE COURTROOM DEPUTY:  May I ask if each juror agrees
10   with the verdict.  If you agree, please say, yes.  If you
11   disagree, please say, no.
12              Juror number 2, do you agree, yes or no?
13              A JUROR:  Yes.
14              THE COURTROOM DEPUTY:  Juror number 3, do you agree,
15   yes or no?
16              A JUROR:  Yes.
17              THE COURTROOM DEPUTY:  Juror number 4, do you agree?
18              A JUROR:  Yes.
19              THE COURTROOM DEPUTY:  Juror number 5, do you agree?
20              A JUROR:  Yes.
21              THE COURTROOM DEPUTY:  Juror number 6, do you agree?
22              A JUROR:  Yes.
23              THE COURTROOM DEPUTY:  Juror number 7, do you agree?
24              A JUROR:  Yes.
25              THE COURTROOM DEPUTY:  Juror number 8, do you agree?
```

```
 1                 A JUROR:  Yes.
 2                 THE COURTROOM DEPUTY:  Juror number 9, do you agree?
 3                 A JUROR:  Yes.
 4                 THE COURTROOM DEPUTY:  Juror number 11, do you agree?
 5                 A JUROR:  Yes.
 6                 THE COURTROOM DEPUTY:  Juror number 12, do you agree?
 7                 A JUROR:  Yes.
 8                 THE COURTROOM DEPUTY:  Juror number 13, do you agree?
 9                 A JUROR:  Yes.
10                 THE COURTROOM DEPUTY:  Juror number 14, do you agree?
11                 A JUROR:  Yes.
12                 THE COURT:  Okay.  Anything else?
13                 MR. BARKET:  No, Judge.
14                 THE COURT:  Thank you.  You can be seated.
15                 THE COURTROOM DEPUTY:  Mr. Smith, may I ask you to
16       stand, please.
17                 As to Thomas Harlan Smith --
18                 A JUROR:  My apologies.
19                 THE COURTROOM DEPUTY:  As to Count 1, how does the
20       jury find, not guilty or guilty?
21                 A JUROR:  Guilty.
22                 THE COURTROOM DEPUTY:  As to Count 2, how does the
23       jury find, not guilty or guilty?
24                 A JUROR:  Guilty.
25                 THE COURTROOM DEPUTY:  As to Count 3, how does the
```

```
 1    jury find, not guilty or guilty?
 2              A JUROR:  Guilty.
 3              THE COURTROOM DEPUTY:  As to Count 4, how does the
 4    jury find, not guilty or guilty?
 5              A JUROR:  Guilty.
 6              THE COURTROOM DEPUTY:  As to Count 5, how does the
 7    jury find, not guilty or guilty?
 8              A JUROR:  Guilty.
 9              THE COURTROOM DEPUTY:  As to Count 6, how does the
10    jury find, not guilty or guilty?
11              A JUROR:  Guilty.
12              THE COURTROOM DEPUTY:  As to Count 10, how does the
13    jury find, not guilty or guilty?
14              A JUROR:  Guilty.
15              THE COURTROOM DEPUTY:  As to Count 11, how does the
16    jury find, not guilty or guilty?
17              A JUROR:  Guilty.
18              THE COURTROOM DEPUTY:  As to Count 12, how does the
19    jury find, not guilty or guilty?
20              A JUROR:  Guilty.
21              THE COURTROOM DEPUTY:  As to Count 13, how does the
22    jury find, not guilty or guilty?
23              A JUROR:  Guilty.
24              THE COURTROOM DEPUTY:  As to Count 14, how does the
25    jury find, not guilty or guilty?
```

```
 1                 A JUROR:  Guilty.
 2                 THE COURT:  Is there request for a poll?
 3                 MR. PARK:  No, Your Honor.
 4                 THE COURT:  Very well.  Thank you.  You may be
 5      seated.
 6                 I want to take this opportunity to publicly thank you
 7      for your participation as jurors in this case.  It was decided,
 8      as I told you when we were selecting this jury, when our
 9      country was formed that these type of important issues should
10      be decided by citizens of the community rather than having
11      judges who have been appointed by the president do it.  And I
12      think our system -- I have had the opportunity to travel around
13      the world to other locations and view judicial systems.  And I
14      think our system rivals any.  So we can only, however, operate
15      this system effectively if we have citizens like yourself who
16      are willing to play a role in the process.  So we appreciate
17      your participation.
18                 And if you will go with my court clerk, she will take
19      you down to my chambers.  And I will be down to thank you
20      personally and give you a token of my appreciation.  I will not
21      talk to you about the case, only ask you to give me any insight
22      as to things that we could do in the future to make the stay of
23      those who come and serve as jurors in the future a better
24      experience than yours.
25                 I hope it was a good experience, but to the extent
```

1    there may have been issues, I like to hear about that so I can
2    let our jury office know so we can improve the environment for
3    those who come in the future and you when you come back.  So
4    you can go with my law clerk.  And I will be down to talk to
5    you in a minute.
6              THE COURTROOM DEPUTY:  All right.  If you may all
7    follow me.
8              (The jury left the courtroom.)
9              THE COURT:  You may be seated.  We will take Mr. Wren
10   first.  What is the government's position regarding -- I guess,
11   we should just go ahead and set some dates first.  What would
12   the date be for the report?
13             THE COURTROOM DEPUTY:  Your Honor, it would be August
14   the 3rd.
15             THE COURT:  Okay.  The report then will be due on
16   August 3rd.  I will be away the next week after that.  So we
17   could do the sentencing the week of the 14th.  We'll do it on
18   the 17th of August, if that is good.  And I would need any
19   memoranda regarding the sentencing by the 14th of August.  Is
20   the 17th at 9:00 good?
21             MR. PARK:  Yes, Your Honor.
22             MR. BARKET:  Yes, Judge.
23             THE COURT:  What is the government's position
24   regarding Mr. Wren's status pending sentencing?
25             MR. BEACH:  That date works for us, Your Honor.

1        We are not requesting a step back for Mr. Wren.

2        THE COURT: Very well. Mr. Wren, the government is
3   not requesting that you be detained. And since there is no
4   indication that you actually engaged in any acts of violence or
5   destruction of property, I will go along with that, even though
6   I am troubled by your involvement in this case. I don't have
7   any problems with people protesting. I think that is the
8   American way. But it is quite another when you go to the
9   extent that you impede the operations of police. I mean, you
10  all are lucky that the police didn't take out guns and shoot
11  you all. So you are very fortunate that you are here.

12       But since the government has not requested you be
13  detained, I will release you. You still have an obligation to
14  comply with all of the conditions of release, so you cannot be
15  rearrested for any reason whatsoever. You cannot possess any
16  type of weapons. If you have a passport and you haven't turned
17  it in, you will have to turn in your passport. You cannot
18  leave the country without authorization to do so.

19       The probation department will be in contact with you.
20  You should fully cooperate with them so you can prepare a
21  report and submit that to me which I will consider in deciding
22  what sentence should be imposed. Do you understand the
23  conditions?

24       DEFENDANT WREN: Yes, Your Honor. Thank you.

25       THE COURT: Very well. We'll see you back here when

```
 1   you come back for sentencing.  Thank you, Counsel.
 2              MR. BARKET:  Thank you, Judge.
 3              THE COURTROOM DEPUTY:  Excuse me, Your Honor.  Did
 4   you set a sentencing memo deadline?
 5              THE COURT:  I thought I did.  If I didn't, the 14th
 6   of August I will need them by.
 7              THE COURTROOM DEPUTY:  Thank you.
 8              THE COURT:  Mr. Smith.
 9              MR. BEACH:  Your Honor, the United States does
10   request step back for Mr. Smith.  His conviction under Count 6,
11   to 111(b) is a violent felony.  As the Court knows, the
12   presumption now shifts toward detention.  And because of that
13   111(b) conviction, I believe we are under 18 USC 3143(b).  And
14   in that case, the burden is higher when it comes to ruling
15   against detention.  So I can go into further argument if the
16   Court would like me to.
17              THE COURT:  That is fine.
18              Response.
19              MR. PARK:  Your Honor, Mr. Smith would request that
20   the Court consider bond in this case.  And I am prepared to
21   make a proffer under 3142 addressing the factors in 3142.
22              THE COURT:  You can be seated.
23              Yes.
24              MR. PARK:  We understand that the burden is on
25   Mr. Smith to establish, first of all by clear and convincing
```

1    evidence that he is neither a flight risk or danger to the
2    safety of any other person or a danger to the community if
3    released.  We also understand that pursuant to the statute,
4    this being a crime of violence, the -- Mr. Smith would have the
5    burden of showing exceptional reasons.  And it is our
6    understanding from case law that exceptional reasons are not
7    defined by the statute.  However, it is in the sole discretion
8    of the Court as to what would characterize the same.
9           In addressing the factors under 3142, obviously the
10   first factor is the nature of the offense itself.  And this is,
11   obviously, considered a crime of violence.  The second factor
12   is the weight of the evidence which, of course, is strong since
13   the jury has returned a verdict of guilty.  The third factor
14   comes to the history and characteristics and it starts with the
15   individual's character.
16          We would note that Mr. Smith is a very hard-working
17   individual.  He owns his own bulldozer service.  You have heard
18   about his work in the past during the course of this trial.
19   You have also heard that he is active in his church,
20   particularly to outreach to rehabilitation centers for addicted
21   individuals.  He is heavily involved in the lives of his three
22   children and their activities.  Most of his time is spent in
23   church, taking care of his employment responsibilities or
24   taking care of his father who had both legs amputated last
25   year.  And Mr. Smith has been active in converting his home to

1    be building an elevator since the house is in the Mississippi
2    delta and 13 feet off the ground.  Both his father and
3    stepmother are on disability.  His mother is deceased.
4            While he is in the delta tending to his father, he
5    also takes care of their yard and upkeep on their house.  There
6    was brief mention during his testimony that he took in his
7    son's best friend for two years and bought his food and clothes
8    and paid his school expense.  This was a mixed-race young man
9    who had drug addicted parents.  He still -- that individual,
10   the young man, still does not hear from his parents -- his
11   biological parents, but still spends considerable time in
12   Mr. Smith's home.
13           As far as his physical and mental condition, he is in
14   ongoing counselor for PTSD and anxiety his physical health is
15   otherwise excellent.  He takes no medication, though he is
16   involved in, like I mentioned, counseling.  His family ties to
17   the area are quite strong.  He has three children, as I
18   mentioned before:  19-year-old, a soon to be 15-year-old and I
19   believe a 4-year-old.
20           I would note that his daughter -- and this goes
21   toward the issue of -- we would like the Court to consider in
22   regard to extraordinary or exceptional circumstances.  During
23   the course of this trial, just a few days ago, Mr. Smith's
24   middle daughter, the 15-year-old, was involved in a severe car
25   wreck.  The car in which she was a passenger turned end over

1   end.  And Mr. Smith has photographs of the same.  But,
2   obviously, has been tied up here and that certainly added to
3   the stress of the trial for him.  But she was taken by
4   ambulance to the hospital with fears that she had broken her
5   hip and her back.  They did testing and the tests were
6   negative, but obviously she is still severely banged up and
7   recovering.  Again, going to family ties, as I mentioned, his
8   father and stepmother live in the Mississippi delta.  And all
9   of his family lives in the general vicinity.  He has two
10  brothers in Columbus, Mississippi that is about maybe 30 miles
11  or so away from where he lives.  He has got another brother who
12  is a pastor in Greenville, Mississippi, which is the area where
13  his dad resides.  He has two aunts and an uncle in the area too
14  and an aunt in Jackson who has been present for most of the
15  trial.  Has three nieces and one nephew and many cousins.
16  Again, all living in the general area.  As far as his
17  employment goes, as I mentioned, he is self-employed doing dirt
18  work as heard in trial.  He has other jobs that are waiting.
19  He has lost several by being here for the last three weeks.  He
20  works every day when the weather allows.  And on bad weather
21  days, he is frequently repairing equipment.  But his work does
22  allow him to be home every night and he owns equipment that he
23  has.  He would like to be able to make arrangements in regard
24  to that equipment.
25              As far as his financial resources go, he has none

1    that allow him to flee the jurisdiction in the Northern
2    District.  The Court could certainly consider adding a
3    condition of electronic monitoring, if deemed appropriate.  As
4    far as his length of residence in the community, which is the
5    next factor, he has been roughly a little over 15 years in the
6    locality where he resides.  That is in Mathiston, Mississippi
7    with a population of around 2300.  It is about 15 miles from
8    Starkville where Mississippi State University is located.  He
9    traveled for 12 years doing environmental work such as Mr. Wren
10   or with Mr. Wren.  And then he lived in Greenville prior to
11   that.  That is where his dad and brother still reside.
12          As far as his community ties, he attends church
13   regularly.  He is very close with his pastor and receives
14   counseling from him and the mental health counseling that has
15   been mentioned and that is part of his actually his bond
16   conditions.  His activities include missionary work, as
17   previously discussed.  And I would note that he owns his home.
18          As far as past conduct other than criminal history,
19   he has no history of violence other than the conviction in this
20   case.  During trial, I'd note that at least the first weekend
21   of the trial, he stayed in a state park camping on weekends
22   because he couldn't afford a hotel.  And when the trial
23   started, he and Mr. Wren were eating sandwiches and cereal that
24   they purchased from Wal-Mart.
25          As far as his history relating to drug or alcohol

abuse, he has used marijuana in the past, but he has complied with all pretrial conditions. And I have been in contact with his probation officer in Mississippi throughout the course of this trial. As far as his criminal history goes, he has got one misdemeanor conviction. And it is for contributing to the delinquency of a minor. What that involved was he took his daughter and her best friend -- and maybe some others down to the Mississippi or the Florida gulf coast, I think to Destin. And while he was there, he had a half pill of Xanax. And a apparently the -- when he left the room, his daughter and her friend got ahold of the pill and apparently halved it. And he was charged basically with leaving the pill -- the half a pill accessible. He had it for -- he constantly had sleeping problems. He told them they couldn't have that, but regardless they did. And apparently a friend bragged to another friend, which resulted in the parents finding out and he was charged.

Initially when Mr. Smith found out, he immediately went to Florida and it was handled. He turned himself in. He returned for any court dates, just as he has in this case. And the incident occurred before his arrest on the present matter. He was placed on probation, by the way. As far as his record concerning court appearances, he has never really had to address this issue before other than in the misdemeanor case in Florida. He has already attended and arrived promptly. He has never missed any court appearance that I am aware of. He has a

1 good relationship with his current probation officer.  And as I
2 mentioned, I have been keeping up to date on the status of this
3 case.
4          Factor B is whether at the time of the current
5 offense, the person was on probation, parole or other release
6 pending trial, sentencing, appeal or completion of a sentence
7 for an offense under federal, state or local law.  And that
8 does not apply to Mr. Smith.
9          As far as bond possibilities, again he has got
10 limited income or limited means.  You know, you heard the
11 testimony even about attending or coming to Washington on
12 January the 6th, he had to get friends to come with him in
13 order to have gas money to make it here.  And had to purchase a
14 rim and a tire as a backup in case they had difficulties on the
15 way and ended up having to return it in order to get enough
16 money to go home.  So while we understand that the burden is
17 significant in regard to the situation, we could submit that
18 the proffer on behalf of Mr. Smith does rise to the level of
19 clear and convincing evidence.
20          And in regard to exceptional circumstances, we
21 realize that is also our burden.  His number one concern is
22 going back to be with his kids.  But we would note that the
23 accident from just a few days ago is something that has put a
24 lot of stress on Mr. Smith.  Again, the Court, as I understand
25 it, has the discretion to determine what are exceptional

1    circumstances.  But we would submit that the conditions -- that
2    the Court can fashion a term -- can fashion terms of his bond,
3    including electronic monitoring or home curfew or anything else
4    that the Court deem to be appropriate, but I'd submit that if
5    Your Honor allows Mr. Smith out on bond, he will return for his
6    sentencing and will continue to abide by whatever conditions
7    are set by the Court.  Thank you.
8             THE COURT:  Well, anything else?
9             MR. BEACH:  I just want to make sure we start under
10   the correct statute.  I believe we should be under 3143(b)
11   since we are post conviction.  And numbers 1, 2 and 3 under
12   3143(b), number 1 and number 2 is an or.  And number 3 is an
13   and, meaning that the Court would need to find either number 1
14   or number 2 in addition to number 3 to justify anything but
15   detention.  And that first number 1, is, you know, likelihood
16   of success on appeal and that sort of factor.
17            Number 2, I believe does not apply.
18            Number 3 is what we have been discussing, which is
19   the flight risk and the danger to the community.
20            THE COURT:  Thank you.  Well, Mr. Smith stands in a
21   different situation than Mr. Wren.  It is unfortunate that he
22   put himself in this situation.  But he came here to protest.
23   And as I said before, protest is appropriate.  It is the
24   American way, but he went beyond just protesting.  He engaged
25   in acts of violence against the police who were merely doing

1   their job to try and protect the Capitol and kicking an
2   officer, throwing a pipe at an officer, taking a flagpole and
3   banging it against the window.  And I thought he was totally
4   disingenuous and provided false information when he says he
5   wasn't trying to break that window.  He was hitting that window
6   hard.  Fortunately it was of a material that didn't break.  And
7   he enmeshed himself in this situation.  Although he wasn't
8   directly responsible, you know, for the death of any of these
9   police officers, but several officers because of how traumatic
10  that event was, committed suicide.  One died of a heart attack
11  at the scene.  And what he did and participated in had a
12  profound impact on our country.  And having did what he did he
13  has shown that for whatever reason, he has exhibited a
14  potential for violence.  And under the circumstances he will
15  have to be detained without bond pending his sentencing.  Thank
16  you.
17              (Proceedings adjourned at 3:49 p.m.)

## C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 21st day of May, 2023.

_____
Sherry Lindsay, RPR
Official Court Reporter